Final case on call today is Agenda No. 23, Case No. 107719, Walter Salon v. Midwest Medical Records Association, Inc. May it please the Court, Counsel, I am Alan Borlak. I represent the Defendant Appellant Midwest Medical Records Association, or MMRA for short. This case involves the statutory construction of two statutes that were amended on September 1, 2001, to limit the charges for copying medical records. They are Section 8-2001 of the Code, which applies to hospitals and the like, and Section 8-2003 of the Code, which applies to physicians and all other medical records. The two amendments imposed two particular charges. They imposed first a maximum handling charge of up to $20, and a maximum but declining per page charge of up to $0.75 per page for the first 25 pages, $0.50 per page for the next 25 pages, and $0.75 per page for the next 25 pages. In addition, they also imposed a permitted a charge of actual shipping cost. MMRA makes copies of medical records for its clients, hospitals and other health care practitioners. In this case, they charge the maximum not to exceed handling charge of $20. Plaintiffs brought their complaint and eventually, among other things, alleged that the maximum handling charge was unreasonable in their third amended complaint. MMRA moved to dismiss, asserting, among other things, that the only criteria for what is reasonable is the not to exceed amount itself. Judge Henry denied the motion, although not on the merits, and certified the question of whether all charges within the not to exceed amount for handling charges are per se reasonable. The appellate court refused to consider the interlocutory appeal, but this court entered a supervisory order ordering them to do it. They then came down with their decision in a two-to-one decision with Justice Griman dissenting. They ruled that there is no safe haven, that any charge within the not to exceed amount can still be unreasonable, and therefore, when challenged, you must have an individual judicial determination on a case-by-case, individual basis. Before I get to the merits, I think it appropriate to point out that although this is a certified question only involving the handling charge, the per page charges are governed by the very same language. As a practical matter, it would seem that the court's construction of this issue for the handling charge will also apply to the per page charge, and counsel does not oppose this proposition in his briefs. Also, I should point out that on the same day that these two statutes were amended, the legislature promulgated for the first time Section 8-2005 that applies to attorneys with the identical charges. So therefore, it could also be expected that this court's construction of the two medical statutes will also probably, I would think, apply to the attorney statutes. In all, you've got thousands of providers who are subject to the operation of these statutes. Every hospital, nurse, physician, dentist, social worker, and all attorneys as well. Couldn't the provider of the service solve this problem by publishing a chart or a listing of what the charges were and explain the fee? I see no reason why that could not be done, nor why that wasn't done in this case. There's no reason to believe that there wasn't this listing available or that plaintiff's counsel who made the request could not have called up the hospital and said, what are the charges? They'd probably then be referred to MMRA, who would tell them, this is our charges. And I believe in the complaint even, there's something about that, that they do list something. But it's been too long since I've frankly looked at that. But I don't think that would be a problem at all. And I think it would be expected. There was a written letter requesting copies. The written letter did not say, what are your charges? Tell us in advance. But of course they were free to do that. There are no criteria for what is a reasonable charge in the statute other than the not to exceed amount. There is no board or commission like the Illinois Commerce Commission that determines what is a reasonable rate. As a result, the health care providers and the copy companies have no choice but to guess what is a reasonable charge. And this guess comes with tremendous attendant costs of uncertainty, disarray, and potential lawsuits, delusional lawsuits, because all a plaintiff has to do is colorably allege that your charge is unreasonable. They don't have to allege anything more because there are no other criteria. As a result, there would be a sword of Damocles hanging over entire industries, not one or two people in isolated instances, but entire industries. But frankly, it gets a little bit worse because the plaintiff's position is it's not enough that you have to guess at a reasonable handling charge and a reasonable per page charge. They say you have to do an allocation too. They say you have to allocate some unknown expenses to what's the handling charge and some unknown expenses to what's the per page charge and come up with an allocated charge so that you avoid what they say is double counting. So in other words, their position is the providers have to guess at what is a reasonable allocated handling charge and what is a reasonable allocated per page charge. With all due respect, is it any wonder that the Illinois Trial Lawyers has filed an amicus in this brief? It will be a class action bonanza, I say with all due respect. The courts, though, have noted, other courts have noted that this amorphous reasonableness test is bound to yield, without statutory criteria, bound to yield unfair and inconsistent determinations. And indeed, some judges have even gone so far as to say it allows judges and juries unchecked discretion. But we emphasize the issue before this court is not whether amorphous reasonable tests or even class actions are good or bad. That's not the issue. The issue is, is this what the legislature intended? The potential for ruinous deluge of litigation on a never-ending basis, ad infinitum for entire industries? We think not. And Justice Grineman agreed. The majority pointed out, however, they said, they ignored the consequences, the dire consequences here. And they said that courts, of course, are well-meaning and they'll do their very best to come up with a verdict as they do in every other case. And of course we agree with that. Courts are going to do their very level best and they're very well-meaning without statutory criteria. They're at sea. That can't help the problem. And they pointed out several examples of when the courts use reasonable tests. Of course, for example, if you make a contract and you don't specify the price, the law imposes a reasonable price. Or in divorce cases, they pointed out, when you have support, you ask for support, you have to show reasonable and necessary expenses. To their credit, they did not go to the issue of when courts award attorneys fees as an award because that's a discretionary amount. That's an apposite and the majority did not go there. But the point is, is these cases are distinguishable. They're distinguishable because they're isolated. They're ad hoc. They don't apply to entire industries on a never-ending ad infinitum basis. Secondly, they're also an apposite. And they're an apposite because there's a cap here. There was not a cap in those other examples. And the cap makes all the difference because, you see, there's no reason why otherwise reasonable charges are not precluded by this cap. There's no reason why a judge couldn't find a particular charge to be reasonable, but if the cap says it's the cap, it can't be charged. So you're not dealing with a reasonableness test. You're dealing with something less than reasonable. And that makes all the difference. But your position is $20 is reasonable in every case? Yes, Your Honor, per se reasonable. Yes. And the purpose is also important. Originally, plaintiffs argued to the trial court and to the appellate court that the purpose of these statutes was to get the lowest cost. At the expense of the competing policies that we say, which would be predictability, stability, and not a deluge of litigation. They say you want to get the lowest price. And that, we admit, drives their construction. They abandoned that argument, though, because it just doesn't make sense that the legislature would have such an intent. And instead they argued on the base of the appellate court a different purpose. They said this time the purpose was to protect the requester to make sure the requester only pays a reasonable charge. But, again, that theory is flawed because we're not dealing with a reasonable charge. We're dealing with a cap. Otherwise reasonable charges will still be cut off by the cap. Now before this court, the plaintiffs argue a different purpose. They say the flawed debates show that the purpose of the legislation was to stop gouging. And we agree. That was the purpose. It was to get low and limited charges. And the legislature accomplished that. And that is accomplished by having all charges up to the do not exceed amount to be per se reasonable. We agree. And it's impossible, really, to argue that a $20 handling charge and a declining per page charge of 75 cents per page is gouging. It's simply, in my judgment, impossible to make that argument. And if that's the case, then the purpose is to limit charges, not to ruin providers and their health care companies. Now let's go to the language. Because no question, language is very important. You look at the language. It's often said it's the most reliable indicator. It's the place where you start. But, of course, you also look at purposes, evils to be remedied, and you compare the consequences. Here the majority plucked out two words. They plucked out and gave them dictionary definitions, reimburse and incur. And they said that the dictionary definitions connoted, they say, actual cost. But the problem is, is that the legislature uses actual cost, the actual words, in legions of statutes. Indeed, they use the words reimburse for actual cost in legions of statutes. But that's not all. They actually used it here in another passage. They said actual shipping cost. So they used actual cost for shipping, but not for the handling charge and not for the per page charge. It would be redundant if actual cost can be inferred to then use actual cost for shipping. And indeed, of course, the court is obligated to read the statute as a whole and not to parse it. With all due respect to the majority, the majority failed to heed the admonishment of this court in Hannah in 2003. This court said that in construing a statute, the court is, you must consider the real world activity that the statute is designed to regulate. And they overturned, in that case, the literal interpretations of the trial court and the appellate court, which took a literal interpretation of the statute, saying you did not heed the context. You did not consider the real world. Indeed, in Hannah, this court also quoted a judge Posner, who said you do not use law world or word world as your context. You use real world. And it seems that that's where the majority put on blinders and disregarded the actual consequences and the context of the statute. Now, with respect to that, we should also note that the statutes are in derogation of the common law, and therefore they are to be strictly construed in favor of those who are subject to the operation of the statute. That would be the health care providers. Counsel argues that the common law said you must have a reasonable charge for copying medical records. But the case that counsel cites where Bins doesn't say that. It only says you're not entitled to free copies. But I don't think this is an issue anyway, because certainly in the common law there was not a handling charge, there was not a propaid charge, and there certainly was a not to exceed cap. So therefore, the statutes are in derogation of the common law, and they must be strictly construed in favor of the health care providers. Counsel, let me ask you this. The language in some paragraph D, that's where the focus of this is, right? You know, Your Honor, I'm sure you're right. That's where it breaks down the page.  My question is this. The sentence where you were just talking about makes the reference to, uses the word reimbursed and reasonable expenses. Yes. But here's a different question I don't think you've touched on yet. It says including the cost of independent copy service companies. So I want to know how this plays out, and I'm going to ask counsel for the other side the same question. The way this legislature set this up, if I go into you as my physician and you don't use a copy company, it's just your staff, I'm going to get charged differently, arguably, than if you have to figure in the costs of the outside service company if next week you go to the copy company. Does that question make sense? It does, Your Honor, and I hope my answer will be responsive. I see it that if the provider uses a copy company, then the provider doesn't have any other costs, or you wouldn't expect it to have any other costs. You would only expect the cost to be the cost of the copy company unless there's some shared duties, and that's not alleged here I don't think. Why wouldn't the medical provider be able to charge this $20 handling fee or whatever you want to call it for processing the request, then they've got the actual cost, I just used actual, reasonable cost, whatever you want to say, that they're going to pass through from the outside copy company. In other words, could the provider which has a copy company do the billing itself and take in the money and then pay off the copy company? I can tell you I don't see any reason why that couldn't happen, but I'm not aware of that happening. It's certainly not alleged in this case. It's alleged that MMRA did the billing, collected the money, and did the work. And might I say, this is an advantage to health care practitioners. They don't want to be in the business, or many of them don't want to be in the business of making copies and doing all the work. There are 14 steps that counsel alleges in the complaint that you have to do. They want to be treating people. They want to be devoting their resources to that, not to this side business of making copies of medical records, billing, and all the like. Do I answer that? Yes. The other question is to go back to something you mentioned earlier, this allocation portion. And I may not understand your argument on that, but under the statute, if you're doing paper copies, there's one set of fees. If you're doing electronic records, it allows you to charge 50 percent of the per page charge for the paper copies. So at least under billing for that, you'd have to at least allocate what's a paper record versus an electronic record, would you not? Well, they're different charges. I don't think there's an allocation. You'd have to at least itemize it, would you not? Itemize it? This is an electronic record charge? If it's an electronic record, that's what you have to charge. And I don't, I myself, Your Honor, don't see an allocation. This is what you can charge. You can't charge more than this. And the issue, even for this statute, which is an amendment in 2008 and really isn't that issue, the court's construction will apply here, too. Can you charge the full price or must you have a case-by-case determination of what is reasonable within the not to exceed? Yeah, I'm just looking at a specific bill. Is the bill going to tell me I'm paying for electronic record copies or not? Yes. It should. The bill should. It should. Now, I have to say, Judge, in this case, and it's not an issue, they allege that MMRA's charges were deceptive because they used the term copy image. And they say that was deceptive. Let me say, first, that issue is, of course, not before this court. That's a fact issue before the trial court. Secondly, the statute that you have noted is an amendment in 2008. In 2001, there was no specification for electronic copies. That issue, the per page chart for electronic copies, is not before the court. It's before the trial court. And it will be not decided by this court's construction. If I may go on, Justice Grimond referred to the legislative history. And there are two aspects of the legislative history that I think should be noted. First of all, there was the issue that all the parties agreed, after the trial lawyers withdrew their objection to the legislation as a compromise, and that all the parties agreed. And this included the medical societies and the hospitals, and the copy companies. And Justice Grimond says it belies logic to believe that these parties could have agreed to a reasonableness test on a case-by-case basis ad infinitum. And counsel says you can't consider that. But then again, the very case that counsel cites, the Kerry case, says you can look at the circumstances surrounding the enactment. That would seem to be the case. Judge Posen also says in the Sunstein case, look at who opposed it. Look where the sentence came from. And then finally, Representative Turner made his comments about the genesis of the bill. And he said that he seemed to equate the cap as the key to the bill. He defined reasonable charge by the cap, if you read his comments. Counsel, thank you. Your time is up. Thank you, Judge. Thank you. Good morning to you all. Good morning, counsel. May it please the Court, my name is Mike Kanovitz. I represent the plaintiff's appellees in this case. Your Honors, my esteemed opposition has stood up here and given you a very impassioned argument for why it would be a good policy to have a copy statute that says you can charge a flat fee. And if he were standing in a different room in this city, across the street, he may have a very receptive audience. But he is in a room where we talk about the statute that actually did get passed. And clearly the General Assembly adopted a statute that isn't a fee-based statute, it's a reimbursement-based statute. And the application that plaintiffs have used all along, that the lower court has used all along, that the appellate court has used all along, is to give a legitimate reading to a reimbursement of the expenses incurred, not to exceed an outside cap. That is the policy that the General Assembly adopted. Let me ask you about this, counsel. The statute says that the handling fee of no more than $20 would be charged for processing the request for copies. I know the majority looked at the overall language of the statute and said it's clear and unambiguous. The processing the request for copies seems to me to be a very broad phrase that potentially includes everything from staff time to paper clips. I think it's broad. And the plain language then may not be as clear as the majority makes out. So here's my question. Going back across the street, if this court determines that that language isn't clear, then we can look at other aides, we can look at what they said across the street, and this is specifically what I'm asking on that, and I believe Justice Griman brings this up in his dissent. So Senator Cullerton introduced the amended bill, and then he said that this bill was a compromise, and then he goes into who compromised, the trial orders, the medical society, the hospital association, the companies that do copy records that agree to this procedure, and then he states in relation to this bill, and it basically sets up a sliding scale of copying charges and an initial fee that you have to pay, a handling charge of $20. And as I said, everybody has agreed to it. Isn't that what happened across the street? Well, let me address, there's two points there, and I don't want to lose sight of the point that this is not an ambiguous statute, so I will come back to that. But if you decide that you have an ambiguity, then you can look more broadly for extrinsic evidence. Part of it is what got said across the street, which I would absolutely suggest, is hardly a clear statement of the interpretation he wants you to give to this statute. Part of it is the history of the enactment of the statute, which you have going back to 1981. You have the first time that the General Assembly enacted a regulation on the pricing, and it said a reimbursement of reasonable expenses not to exceed. That was for the physicians. I'm sorry, a reimbursement of reasonable expenses incurred in connection with the copies, no not to exceed, no price cap. I mean, so at the time that the General Assembly used that language, it wasn't talking about some set fee. It couldn't have been talking about some set fee because there was no not to exceed rate that they could try to turn into a set fee. So that same language has been in the statute for almost 30 years, and the proper reading, if you're going to look at it. What is Senator Collarton talking about when he says a handling charge of $20? Well, you have to start with the language that has been there all the way along, which is a reimbursement-based policy, reimbursement of reasonable expenses incurred. The $20 is exactly what it says. It's a not to exceed. It's a cap on the reimbursement of reasonable expenses incurred. And you can't lose sight of that word reimbursement. That is a different policy than the policy that they are arguing for, which is a fee-based policy. A reimbursement-based policy assures that the requester gets the copies of their medical records at the lowest possible price that is consistent with the actual cost of the provider. And if you take a step back, the only confusion that gets created here at all is the fact that the copy company isn't dealing with the hospital in an arm's-length transaction. I mean, they're talking about this amorphous reasonableness standard. Of course, they keep talking about reasonable, and they won't talk about reimbursement. But if you have an arm's-length transaction, the hospital, and hopefully this will help address your point, you know, the hospital goes out and it contracts with the copy company to make the copies, and it passes through that cost. If the hospital isn't receiving anything back from the copy company, which here we have substantial consideration flowing from the copy company back to the hospital, then it's easy to say what a reimbursement is. A reimbursement is what the copy company charged the hospital, which when they use the term independent copy company, I believe that's the system that the legislature was envisioning. The legislature was not envisioning this contract where the hospital is going to get more than a reimbursement out of the arrangement because the copy company isn't going to be giving them side consideration. Also, you know, once you have an arm's-length transaction. Wait a minute. Let me go back to that other point. First of all, what I don't hear you saying is when all the work is done by the company, as was done in this case, that there wouldn't be a case-by-case analysis of reasonableness. But even when they hire out, as Justice Kilbride was saying, wouldn't that also be a determination if the charge that is being passed on is reasonable? When the hospital is in an arm's-length transaction, there would not be a case-by-case determination reasonableness. You don't need one. Because once the hospital is not economically benefiting by choosing a particular copy company, which is likely to be the most expensive copy company since it's giving side benefits to the hospital, and just chooses out of a pool of competing copy companies that aren't giving it side benefits, then it made a reasonable choice. You know, reasonable is a flexible word. What the reasonable expenses mean is the hospital can't pile up those expenses for a non-efficient purpose. And here the problem – But they do not apply when the company is doing the work on their own, not hiring them. When the hospital is – The hospital is not hiring them. When the hospital is doing the work on its own, yeah, it would simply be passing through its costs. But, you know, it is not unreasonable for a hospital to keep track of its costs when it's providing those copies. The problem that, you know, brings this case into court is that there was a non-arm's-length transaction. If you take a look at the few other cases that he was able to gather in the 30 years that this language, the reimbursement language, has been in the statute, you know, by and large, they all had to deal with problems where the copy company – there were copy company cases where the copy company was giving consideration back to the hospital. There just aren't any pure hospital cases out there because hospitals can keep track of what they do. Back to the handling charge. Back to the – yeah. Handling charge. So – and you agreed. I saw you nodding agreement that that could be staff time to paperclip. So in determining whether it was reasonable or not, they'd have to assert this person worked on this at so much an hour, and is that where we're going to go? Well, I don't think – I mean, the – obviously, if it takes 10 minutes to make a set of copies, that should be factored in. But, you know, with the whole bit about the allocation theory with it can cover paperclips, I read through that thing, but that issue only arises, and it's very specific to this case, because they're trying to claim this per se $20 charge in combination with a charge that is not capped. You know, to justify that $1.25 per page rate, they're taking advantage of an exception in the statute, and the exception says that the provider may charge the reasonable cost of all duplication of record material, which cannot be routinely copied on a standard commercial photocopy machine. That's where they put their $1.25 per page charge. How are we going to say that $1.25 a page is the reasonable cost of the duplication of that record material without looking at the $20 also? Really, what they're calling the allocation theory highlights why it can't – why the plain language meaning really is what – how it reads. It can't be the case that you can analyze reasonable costs under this exception without looking at the total of what they're charging for this duplication of record material. So getting back to the plain language meaning, which I do believe is unambiguous, the argument that they had made for ambiguity in the briefing was this concept that it uses reimbursement of reasonable expenses incurred in one place and uses actual expenses in another place. And, of course, for a statute to be ambiguous, it has to be reasonably susceptible to two different interpretations. And we've got to put the emphasis on the reasonable there, because what that juxtaposition that counsel is suggesting this Court should adopt is that when the General Assembly used reasonable expenses, putting the words reimbursement on one side of it and incurred on another side of it, it meant that reasonable expenses could be more than actual expenses. That's not a reasonable interpretation. First of all, the plain language meaning of the word expenses suggests things that are actually incurred. Secondly, it is a basic canon of construction that words are understood by the context in which they're used. And here, a reimbursement of reasonable expenses incurred clearly does not envision something more than actual expenses. So that basis for an ambiguity is not – there's no reasonable basis for finding an ambiguity based on that. Now, the – I apologize, but can you remind me of the ambiguity that you believed you found? I just went back to the language that the handling fee of no more than 20 would be charged for processing the request for copies. I just noted that that's a very broad phrase. It comes from the allocation theory, I guess, is where it comes from. But, again, there is no ambiguity from that, because the reason why they're raising the allocation issue is because of the statutory exception. And, obviously, you can't assess under the exception what the reasonable cost – whether something's been provided at the reasonable cost of the duplication without looking at the total charge. And so, really, taking a step back, it is a very clear statute. In tracing it through its history, it makes it particularly clear. It started off, you know, going back to 1981 when the General Assembly first used these words, a reimbursement of reasonable expenses incurred. There was no price cap. When we were across the street, Representative Turner was saying, you know, I still get these bills, these bills are too high, and we're going to put an outside cap on it. And the outside cap, obviously, relieves the requester of having to prove that anything above that cap represents more than the reimbursement of a reasonable expense. But an outside cap doesn't prevent them from saying that something less than that is the reimbursement of a reasonable expense. And reimbursement really is a hurdle that he won't address and didn't address in the briefing in which he can't get past. And it is the language that the legislature has used for, you know, 30 years, and importantly, prior to these price caps. Counsel, let me ask you this. To understand your argument, are you interpreting the statute that allows the independent company profit factor to be part of this, to be passed along? Absolutely. I mean, the hospital can use an independent copy company as a vendor, just like it can use the guy that, you know, would sell them a Xerox machine or sells them the heartbeat machine. You know, obviously, all those companies can make profits. What they can't do is not have an arms length transaction where they're getting around the reimbursement policy of this statute by charging the maximum and then feeding part of it back to the provider. That's clearly not what this statute envisioned. And that's what they're doing, and that's the genesis of this whole problem. And, you know, going back to this landslide of litigation problem, again, if you take a look at the handful of cases that he's gathered in 30 years of this statute having the reimbursement language in it, you know, they're cases where a copy company was involved with the provider, giving them back consideration. And the language of the statute that allows that, is that in subparagraph D that refers to including the costs? The language of the statute does not allow an end run on the reimbursement limitation. No, no, I mean the independent copy company. Oh, yeah, absolutely. I mean, is that the language you'd look at to interpret that? Yes. The statute specifically says that they can use an independent copy company. If the independent copy company charges them for that service, which, of course, they're going to do, then they can pass that along to the requester. And so if we ended up in an arms length world where there's independent copy companies, you know, I would expect that we're going to see cheaper prices than what we do see, because we already know that in the non-arms length transaction, they're willing to give back a premium of 50% on every copy that they make. So, and furthermore, you know, if we ended up in a situation where the copy company's charged all the way up to the max and there was nothing going back to the hospitals, then that's what the market would do. A court can rely on what the market does as being reasonable, absent price fixing, which takes us into a whole different set of statutes, which we don't have to worry about. But there is not an amorphous standard. Can you ask us to interpret the statute based on, you've used this phrase, at arms length transactions. Sure. How do we know, in this case, in this record, what the transaction is? Is that part of the statutory scheme? The transaction that is an issue in our case is pled in the complaint that the copy company returns essentially one free copy for every two that it gets to sell, plus the free software. What is contained in the statute is that the provider may seek a reimbursement of the costs incurred to make the copies, including the cost of independent copy companies. But when the cost of the independent copy company includes all these freebies going back to the hospital, then that is not a reimbursement. That is an end run around the policy that the General Assembly decided to adopt for this statute. And without that feature, it is a very administrable statute. You know, whatever the copy company charges the provider, that's what the reimbursement is. And like I said, I think the term reasonable expenses has a comfortable enough amount of room to it that if it is an arm length transaction, then the court can assume that the provider picked a reasonable copy company. Since I got you off track, I just wanted to get one other thing cleared up. At the very end of your brief, I think it's argument three, it's the alternative argument. It's just a couple of three pages there. You make a comment about accepting Midwest's argument that the price caps are reasonable per se. The only tenable construction is that they are reasonable as a group, and you've got that in italics. Not when combined with other uncapped charges. So could you kind of elaborate on that? That gets back to what I think is a misuse of this term on his allocation theory. The $1.25 per page for printing the copies of the digital records, the company justifies that as being part of the exception for records that cannot be copied on a commercial photocopy machine. Examples of which in the statute are things like x-rays and pictures. But at any rate, give them that they can fit it under there for purposes of this argument. Even if they can fit it under there, how can it be that an uncapped charge, which has to be assessed at being provided at a reasonable cost, can be assessed when they're still charging $20 for the handing fee and saying, you can't look at that as part of assessing how I justify my $1.25 per page. As a practical matter, it doesn't work. And really, I mean, the reason why this issue is even in this court, why it's in our complaint is because when they were asked to justify their $1.25 per page for printing copies of digital records on a laser printer, they said, oh, there's so much that you have to do. But then, of course, they've thrown themselves back into the $20 handling fee because, as you pointed out, it can cover everything from paper clips on down. So you can't take advantage of the exception and still claim that there is this per se reading for things that aren't part of the group of things that the legislature capped. If you want to read the caps as being a per se okay price, you've got to stay within them. And obviously, you know, we know, and this, you know, is the type of circumstances of the enactment the courts sometimes do look at, we know what happened later, which was that the General Assembly said there is no way that $20 together with $1.25 per page is a proper charge. In fact, it's a tenth of that. So essentially, the certified question, you can call it an alternative argument or you can call it an additional reason why the plain language interpretation has to be the correct one, but the certified question may be improvidently granted given the issue in this case. If there are not any further questions, allow me to conclude. I want to thank you all for the opportunity to be here and argue. Thank you for your time in this case. And please ask that you enforce the plain language meaning of this statute. Thank you. Mr. Justice Thomas, I just wish to underline, if I may, the point you made about the handling charge being for processing the copies and how broad that is. In fact, the term processing does have a dictionary definition that two cases, two courts we cited have relied on, one the Tenth Circuit and another an Illinois Appellate Court, where they use the dictionary definition of process, which means basically from A to Z, everything, from beginning to completion. So all the tasks, all the services, all the things that must be done are included in the term processing for the handling fee. I believe counsel is mistaken when he says the language was in the predecessor statute. The predecessor statute 8-2001 for hospitals was enacted in 1969. And up until the time it was amended in 2001, it never had that language. There wasn't anything about charges, period, end of sentence. There's nothing in that statute that applies to reimbursement, reasonable expenses or actual shipping costs. There is, however, in section 8-203 that applies to physicians and other practitioners, there was that language. That language was enacted in 1976. Interestingly, 8-201 was amended on three different occasions before 2001. And even though you had that language in 2003, the legislature never put it into 2001. Never. So the key statute for hospitals under which the hospitals have been sued under the predecessor statute, as we pointed out, never was in there. Now, with 8-203, it was a different situation. There, that statute went not to providing copies for requesters, but for permitting requesters to make their own copies. And the statute said for physicians and the like, you can be reimbursed for reasonable expenses that you incur in allowing that to happen. So it was only with respect to permitting self-copying and only in that one statute, not in the hospital statute. Third, you know, it's really, I'm trying to grope for the words to say this. This is a case where this court, as I at least understand it, will come down with a decision construing a statute that will apply to thousands of health care providers and attorneys. And yet it seems like counsel's argument is saying, construe the statute because of the particular factual allegations we've made against MMRA, which we are not even at liberty to rebut. It seems to be a disconnect there. And I think that was one of the questions was, was this open transaction you were talking about, counsel? Was this in the statute? And of course it isn't. What counsel is referring to is his allegation that MMRA gives away a certain amount of free internal copies to the provider. That's what he's talking about. That's the so-called freebie. Is this important? Maybe it's even a good thing that health care providers get this. But in any event, the copy companies have to make a profit if you want them in business. There's no question about that. And if they have a $20 handling fee and a per page declining fee, they have to make their profit within that amount. If they can't make a profit, a reasonable profit, they obviously go out of business and the providers then have to do it. Wasn't the legislature's intent that this be a loss leader? That the providers have to make copies of records at a loss? I think not. But that ultimately I think may be the bottom line question. Did the legislature intend that there would be no safe haven, that no copy company and no provider is free from a lawsuit on the culpable allegation that the charge is unreasonable, even if within the not to exceed amount? Mr. Borlaug, I probably should have pursued this with Mr. Kanovitz, but he made the comment, and I hope I got this right, that the certified question might have been improvidently granted. As I understand the posture of this case, the trial judge was reluctant to reach, my memory on this is a little vague from reading the briefs, but certain rulings and then said, well, maybe rather than going through the whole trial, we should let the appellate court. And, of course, the reason they answered it, they initially denied it, and we entered the order, supervisors saying answer it. I mean, are the parties really honest? Are you really here because you want to be here, or would you rather just? I think so, Your Honor. The judge, what Judge Henry was saying is I feel that, you know, if I'm reversed on this, we're going to have to go through this lengthy litigation, if I may say respectfully, a litigation free for all, because there are no criteria as to what is reasonable. It will be very expensive. It will be very burdensome, not only in this case but in other cases. It's a matter of statutory construction. That's a matter of law. That's de novo. So, yes, to answer your question, I'm happy we're here. I think it will do a lot of good for a lot of people besides my client for this court to construe a statute and determine whether there is a safe haven or whether there is not a safe haven. If there are no more questions, thank you very much for the opportunity, for your patience, and for your time. Counsel, thank each of you. Fine arguments. Case number 107719 will be taken under advisement.